MEMORIAL CITY GENERAL HOSPITAL CORPORATION, Appellant,

v.

CINTAS CORP., NO. 81, Appellee.

No. A14–84–151–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 20, 1984.

John K. Grubb, Houston, for appellant.

Timmothy T. Read, Hutcheson & Grundy, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a judgment awarding Appellee, Cintas Corporation, No. 81, damages and attorney's fees in a breach of contract action. Appellant, Memorial City General Hospital Corporation, in seven points of error, argues that: the trial court erred in awarding actual damages to Appellee; Appellee did not fulfill all of its obligations under the contract; a price increase by Appellee justified Appellant's termination of the contract; and the award of attorney's fees to Appellee was incorrect. We affirm.

Appellee is a Texas corporation formerly known as Alamo Linen Service, a division of Industrial Towel & Uniform Company. In November 1978, Appellant and Alamo Linen Service entered into a written Linen Rental Service Agreement. Under the agreement, Alamo agreed to furnish and supply all of Appellant's requirements for hospital linen. The agreement was for a primary term of fourteen months and thereafter from year to year unless the contract was terminated. The written contract provided that unless either party gave the other party written notice of termination thirty days prior to the end of the primary term, the contract would be automatically extended from year to year. Neither party gave written notification of termination prior to the end of the primary term.

Paragraph three of the contract provided:

> The parties agree that in the event the Company's costs in rendering such services herein described are increased during the term of the contract or any extension thereof, due to increased costs of labor or materials or both, the prices then being charged for the said services shall at the option and instance of the Company, be revised, however, the Hospital shall have the right to terminate the Agreement by written notice of same to the Company within sixty (60) days of being advised of the price revision. In the absence of such notice of termination, the price revision shall be deemed acceptable to the Hospital and shall be considered by the parties as a binding modification of the Agreement; and the Agreement, as modified shall remain in full force and effect.

The contract further provided in paragraph eight that "[i]f any linens furnished the Hospital are lost, damaged, destroyed, or abused while in the Hospital's possession from any cause other than normal wear and tear then the Hospital shall, on demand pay the Company a sum equal to the then current market price of said linens as if new, less an amount equal to 30% thereof."

On March 7, 1980, Alamo notified Appellant that because of an increase in the market price, the charge to Appellant for lost or damaged linens was being increased. Shortly thereafter, Appellant sent notification to Alamo that "[e]ffective April 16, 1980, Memorial City General Hospital will no longer require the services of Alamo Linen Services." The letter did not

give a reason for the termination. Alamo considered the termination to be a breach of the linen service contract and brought this action for damages.

In points of error one through four, Appellant attacks the award to Appellee of $74,000 in actual damages. Point of error one attacks the award because there is no evidence to support Findings of Fact Nos. 17, 18, 19, and 20. The second point of error challenges the factual sufficiency of the evidence to support the same findings of fact.

> The challenged findings of fact were:
> 17. That during the time Plaintiff furnished linen service to Defendant, Plaintiff incurred average variable costs of $3,000.00 per week that it would not have incurred but for the furnishing of linen services to Defendant.
> 18. That Plaintiff was able to avoid average variable costs of $3,000.00 per week as a result of not furnishing linen services to Defendant under the Contract from April 16, 1980 through December 31, 1980.
> 19. That Plaintiff lost net revenue of $2,000.00 per week for 37 weeks from April 16, 1980 through December 31, 1980 as a result of Plaintiff's not being allowed to furnish linen services to Defendant during that time period.
> 20. That $74,000 is the difference between the amount of revenue Plaintiff would have earned from Defendant pursuant to the Contract, and the amount it would have cost Plaintiff to supply linen service to Defendant pursuant to the Contract, from April 16, 1980 through December 31, 1980.

Additionally, the trial court found that the average weekly volume of rental charges for the remainder of the term of the contract would have equalled or exceeded $5,000.00 per week.

In deciding Appellant's "no evidence" point of error, this court is to consider only the evidence and inferences from the evidence which tend to support the findings and conclusions and to disregard all evidence and inferences to the contrary.

*Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Coffee v. City of Alvin*, 641 S.W.2d 597, 602 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

David Hoyt was acting General Manager of Alamo and was personally involved with the Memorial City Hospital account. Hoyt testified that the average weekly rentals under the contract were $5,000 and that he saw no reason for the average weekly rental to drop below that figure during the remainder of the contract term. Appellant does not dispute the fact that there were 37 weeks remaining in the term of the contract.

Mr. Robert J. Kohlhepp, Executive Vice President of Appellee, became personally familiar with Alamo's operations in general and the Memorial City Hospital account in particular. Kohlhepp gained his knowledge about Alamo because Appellee sought to acquire Alamo's parent company, Industrial Towel and Uniform Corporation. Kohlhepp concurred with Hoyt's testimony as to the average weekly rentals under the contract. Kohlhepp also testified that certain of Alamo's costs were avoidable due to the termination of the contract. According to Kohlhepp, Alamo could avoid incurring certain variable costs in the amount of $3,000 per week. These variable costs included the cost of water, soap, chemicals, and other supplies consumed in actually performing under the contract. Kohlhepp also testified that certain of Alamo's costs could not be avoided regardless of the fact that performance under the contract was no longer required. Kohlhepp was asked if he had an opinion as to the amount of money Alamo lost by the termination of the contract. His opinion was that Alamo lost $2,000 per week. This figure was based on the difference between $5,000 per week revenue and $3,000 avoidable variable costs. Kohlhepp acknowledged that the $2,000 figure included fixed costs to Alamo that could not be avoided.

Kohlhepp's testimony was based in part on his own experience and in part upon Plaintiff's Exhibit No. Nine, which

was already in evidence. Contrary to Appellant's assertion that Kohlhepp relied exclusively on a study not introduced into evidence, Kohlhepp testified that Plaintiff's Exhibit No. Nine was the financial statement he used in determining the variable costs and fixed costs. Looking only at the evidence and inferences in support of the findings, we are unable to say there is no evidence to support the challenged findings of fact. Appellant's first point of error is overruled.

■ In deciding a challenge to the factual sufficiency of the evidence to support a finding, an appellate court is to consider all the evidence in the record, both the evidence which supports the finding and that evidence which is against the finding. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Bormaster v. Henderson*, 624 S.W.2d 655 (Tex.App.—Houston [14th Dist.] 1981, no writ). Appellant introduced evidence showing Alamo's profitability for the twelve months before and nine months after the termination of the contract. Generally, Defendant's Exhibit Nos. One through Nine showed that before the breach by Appellant, Alamo was losing money but after the breach, Alamo was more profitable. From this, Appellant argues that Alamo was losing money on the Memorial City Hospital contract and that on balance, there is more evidence against Findings of Fact Nos. 17, 18, 19, and 20. We disagree. Appellant's evidence on Alamo's overall profitability does not alone establish whether the specific Memorial City Hospital contract was profitable. Looking at all of the evidence in the record, we cannot say there was factually insufficient evidence to support the challenged findings of fact. Point of error two is overruled.

Point of error three is that the trial court erred in awarding damages because a judgment awarding damages cannot stand if it is based on incompetent evidence. Appellant believes that the only evidence supporting the award of damages is Kohlhepp's testimony concerning a study of Alamo's revenues and variable costs based upon this account. Appellant argues that Kohlhepp's testimony about the study and the study itself were hearsay. Appellant concludes that this hearsay evidence is incompetent and will not support the judgment. *See Cooper Petroleum Co. v. La Gloria Oil & Gas Co.*, 436 S.W.2d 889 (Tex.1969); *Aetna Insurance Company v. Klein*, 160 Tex. 61, 325 S.W.2d 376 (1959).

■ This case was tried in November 1983. The Texas Rules of Evidence became effective September 1, 1983, and control in this case. TEX.R.EVID. 802 provides in part: "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Appellant failed to object at the time of trial to the hearsay nature of the challenged evidence. Appellant cannot now argue that the evidence has no probative value. Point of error three is overruled.

In point of error four, Appellant argues that the trial court erred in awarding actual damages in the amount of $74,000 because the evidence submitted to establish loss of profits was uncertain and speculative.

■ We generally agree with Appellant that recovery for loss of profits will not be allowed where the facts show that the profits claimed are too uncertain or speculative. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938). However, it is not necessary that profits be susceptible to *exact* calculation. It is sufficient that there is evidence from which they can be determined with a reasonable degree of certainty. *Copenhaver v. Berryman*, 602 S.W.2d 540, 544 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The amount of lost profits that are recoverable is usually measured by the loss of "net profits" and not the loss of "gross profits", except that lost profits may be measured by the difference between gross receipts and expenses which would have been incurred had the gross receipts been received, if the expenses are fixed with a reasonable degree of certainty. *Mangham v. Hall*, 564 S.W.2d 465, 468 (Tex.Civ.App.—Corpus Christi 1978, writ

ref'd n.r.e.); *Copenhaver*, 602 S.W.2d at 544; *American Construction Company v. Caswell*, 141 S.W. 1013 (Tex.Civ.App.— Austin 1911, no writ). Appellee introduced evidence as to the variable expenses it could avoid due to termination of the contract. Appellant did not dispute the reasonableness of the amount of variable expenses that could be avoided. Both Hoyt and Kohlhepp testified to the average weekly rentals. With the record before us, we cannot say the evidence was too uncertain or speculative. Point of error four is overruled.

■ In point of error five, Appellant argues the trial court erroneously found that Alamo did not institute any service price revisions after August 1, 1979. As stated above, paragraph three of the contract gave Appellant the right, within sixty days, to terminate the contract if Alamo were to increase linen service prices due to the cost increases in labor or materials. Paragraph eight of the contract allowed Alamo to charge Appellant for 70% of the market price of linen to replace that which was destroyed, lost, or damaged while in Appellant's possession. The trial judge's findings of fact and conclusions of law were that the increase for replacing lost or destroyed linens was not the type of linen service price increase which activated Appellant's right to terminate the contract.

Finding of Fact No. 10 states:

That Plaintiff did not institute any additional service price revisions relating to the Contract after August 1, 1979.

Conclusion of Law No. 9 states:

That an increase by Plaintiff in the charges for lost linen or a notification by Plaintiff to Defendant of an increase in the then current market price of replacement linens did not constitute a price revision for services, which would have authorized Defendant to terminate the contract.

Appellant believes that the finding of fact is against the great weight and preponderance of the evidence. Appellant also argues that the conclusion is erroneous as a matter of law. We disagree.

Hoyt testified for Alamo concerning the issue of a price revision. Hoyt stated that the increase in the linen replacement charge was a matter distinct from a rental service price increase. Mr. Jerry Mueck, former Assistant Administrator of Memorial City Hospital, seemed to understand the difference between a rental increase and replacement increase. Paragraph eight tied the replacement charge to Appellant to 70% of "the *then current market price* of said linens (emphasis added)...." By using the phrase "then current market price," the parties expressed an intention that the charge for replacement linens would change from time to time. Paragraph eight did not have a separate termination clause if the replacement charge increased. Looking at the wording of the contract and the testimony in the record, we are unable to say that the trial court's conclusion was erroneous as a matter of law or that the challenged finding of fact was against the great weight and preponderance of the evidence. Appellant's fifth point of error is overruled.

■ Point of error six is that the trial court's Finding of Fact No. 5 and Conclusions of Law Nos. 5, 16 and 17 are against the great weight and preponderance of evidence and erroneous as a matter of law. Finding of Fact No. 5 was "that Plaintiff continuously furnished linen service to Defendant in Houston, Harris County, Texas, from November 1, 1978 until April 15, 1980, in accordance with the terms of the Contract." The challenged Conclusions of Law were:

5. That Plaintiff continuously performed its obligations under the Contract from November 1, 1978 until April 15, 1980.

16. That Plaintiff did not materially breach its obligations under the Contract or otherwise excuse performance by Defendant under the Contract.

17. That there was not a lack of, or failure of consideration received by Defendant for the Contract.

Appellant argues that Alamo's failure to properly perform its obligations under the contract justified Appellant's termination.

Appellant introduced testimony from several witnesses on the issue of Alamo's failure to properly perform. The witnesses testified to torn, stained, and improper sized linens. Appellant's witnesses testified that there were a substantial number of torn or stained sheets. There was also testimony that almost all of the sheets provided by Alamo were too short for the hospital beds. Appellant's witnesses testified that these problems were substantial and continued over several months. Appellee introduced evidence which did acknowledge there was a problem with torn and stained sheets but that the problem was minor. Appellee argues that any "problem" with the service was not the reason Appellant terminated the contract. All of Appellant's witnesses testified that the problem occurred and continued over a period of time that included the time for renewal of the contract. Appellee argues that if the problems were so substantial Appellant would not have allowed the contract to automatically renew in December, 1979.

The evidence was conflicting. We cannot say that the challenged finding and conclusions were erroneous as a matter of law. Looking at all the evidence and the inferences from the evidence, the evidence supporting the findings and conclusions of the trial court was not against the great weight and preponderance of the evidence. Appellant's sixth point of error is overruled.

■■■ Point of error seven is that the trial court erred in awarding Appellee attorney's fees of $10,000 for trial and additional fees of $15,000 in the event of appeal. Appellant argues there can be no award of attorney's fees in the absence of an award of actual damages. This argument is predicated upon Appellant's earlier points of error attacking the award of actual damages. Since Appellant's arguments regarding the award of actual damages have been overruled, Appellant has failed to show that the award of attorney's fees was error.

■■■■ Appellant also complains that the award of fees in the case of appeal to the court of appeals and supreme court is improper because the fees were unconditionally awarded regardless of whether Appellee was successful on appeal. Since Appellee has been successful in this court, Appellant's argument as to fees for appeal to the court of appeals fails to show that the error was harmful. TEX.R.CIV.P. 434. As to the award of attorney's fees for appeal to the supreme court, the trial court should have awarded additional attorney's fees only in the event of an unsuccessful appeal by Memorial City General Hospital Corporation. *Siegler v. Williams*, 658 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1983, no writ). As to the fees for appeal to the supreme court, Appellant's seventh point of error is sustained. However, the trial court's error in the wording of the award of attorney's fees does not mandate that this case be reversed. Where a portion of a judgment relating to the manner of the award of attorney's fees was unauthorized, the judgment may be modified on appeal so as to correct the award. *See Maryland Casualty Company v. Hopper*, 237 S.W.2d 411 (Tex.Civ.App.—El Paso 1950, no writ).

The judgment is modified to read in part that:

It is further ORDERED, ADJUDGED and DECREED that Plaintiff, CINTAS CORP. NO. 81, have and recover judgment against Defendant, MEMORIAL CITY GENERAL HOSPITAL CORPORATION, in the further amount of $7,500.00 in the event this case is unsuccessfully appealed by Defendant, Memorial City General Hospital Corporation, to the Supreme Court of Texas, together with postjudgment interest on such additional amount at the rate of ten percent (10%) per annum from the date of judgment herein until paid, for which let execution issue.

The judgment is affirmed as modified.