Ken W. DAUGHERTY, Jr., Appellant

v.

Mel JACOBS, Appellee.

No. 14–04–00682–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 19, 2006.

610

Morris Tabak, Michael L. Heyman, Houston, for appellants.

Steven Engelhardt, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

JOHN S. ANDERSON, Justice.

This is a Deceptive Trade Practices (DTPA) case. TEX. BUS. & COM.CODE ANN. § 17.44 et seq. (Vernon 2002 & Supp.2005). Asserting six issues, appellant, Ken Daugherty, appeals a judgment in favor of appellee, Mel Jacobs, in a suit arising from Daugherty's repair of Jacobs' 1960 Jaguar. We affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

In late 1999, Mel Jacobs approached Ken Daugherty at Daugherty's repair shop, K & K Vintage Motorcars, seeking repair and restoration work on Jacobs' 1960 Jaguar. After visiting with Daugherty two times to assess whether K & K should undertake this repair and restoration project, Daugherty prepared an estimate in the amount of $16,165. Both parties understood this was not a firm price but an estimate because unforseen repairs could arise. Daugherty told Jacobs the timeline for repair should take between two and three months and warranted all work for one year.

Between January and September 2000, K & K worked on Jacobs' Jaguar. Each month, Daugherty would send an invoice to Jacobs, which included a brief description of the work performed, any parts required, and the charge. Each month, Jacobs paid those invoices, which totaled approximately $30,000 by September. In September 2000, Daugherty informed Jacobs the vehicle was ready for pick up. When Jacobs went to K & K, the repairs were not completed, and Jacobs refused to take possession of the vehicle until all work was performed according to the original agreement. K & K kept the vehicle until January 2001 when Jacobs returned to retrieve his Jaguar. K & K billed Jacobs two more times, in October and December 2000, for approximately $5,900.

Jacobs paid these invoices in order to take possession of the vehicle, but he found many of the problems still had not been resolved, so he stopped payment on the final check.

Jacobs then took the Jaguar to Heritage Motors to complete the work begun by K & K. While the Jaguar was at Heritage Motors, Daugherty took possession of the Jaguar pursuant to a mechanic's lien and held the car until Jacobs agreed to repay the stopped check plus attorney's fees and interest. Daugherty attempted to file criminal charges against Jacobs with the Harris County District Attorney's Office for check fraud, but that office never accepted any charges. To regain his vehicle and prevent Daugherty from selling it at public auction, Jacobs paid Daugherty the money requested. After Jacobs retrieved the Jaguar, Daugherty agreed to honor the warranty, so Jacobs brought the vehicle back to K & K for further repairs. Daugherty charged Jacobs for some additional work and parts, which Jacobs believed should all have been included under the original one year warranty. Reluctantly, Jacobs paid Daugherty all remaining invoices as charged.

Jacobs found another repair shop in California to correct the defective work and finish all work not completed by K & K. Jacobs paid approximately $10,000 for this additional work. All repairs were completed to Jacobs' satisfaction by the shop in California.

Jacobs subsequently filed this lawsuit against Daugherty and K & K alleging negligence, breach of contract, violations of the Texas Deceptive Trade Practices and Consumer Protection Act, fraud, breach of warranty, and breach of bailment/conversion. A jury found in favor of Jacobs on all questions and assessed damages, as follows: $17,000 economic damages;

$10,000 mental anguish damages; $10,000 for acts committed knowingly by K & K; $5,000 for acts committed knowingly by Daugherty; and reasonable and necessary attorney's fees in the amounts of $34,000 for trial, $7,500 for appeal to the Court of Appeals, and $5,000 for appeal to the Supreme Court. Daugherty and K & K originally appealed the judgment of the trial court. K & K filed bankruptcy, and this court severed K & K's appeal and stayed that appeal for bankruptcy proceedings. We only consider Daugherty's issues in this appeal.

## DISCUSSION

Daugherty presents six issues for our review: (1) factual sufficiency of the jury's finding Daugherty engaged in false, misleading, or deceptive acts or practices; (2) factual sufficiency of the jury's finding Daugherty engaged in unconscionable conduct; (3) factual sufficiency of the jury's finding Daugherty committed fraud against Jacobs; (4) factual sufficiency of the jury's finding Daugherty acted knowingly; (5) trial court's error in denying Daugherty's motion for continuance because of the unavailability of Daugherty's expert witness; and (6) trial court's error in awarding unconditional attorney's fees for appeal to the Court of Appeals or Supreme Court.

### I. Factual Sufficiency

#### A. Standard of Review

In Daugherty's first through fourth issues, he asserts the jury's findings were factually insufficient. When a party claims the evidence is factually insufficient to support a finding to which the other party had the burden of proof, the attacking party must demonstrate no sufficient evidence exists to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The appellate court must ex-amine the entire record, considering both the evidence in favor of and contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 123–24 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). We will set aside a finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). As the reviewing court, we do not substitute our judgment for that of the trial court merely because we might have reached a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). In applying this standard of review, only the jury may determine the credibility of witnesses and weight given to that testimony. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

The public policy underlying the Texas Deceptive Trade Practices Act (DTPA) is the protection of consumers from false, misleading, and deceptive business practices and unconscionable actions. TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon 2002). To achieve this goal, the legislature has mandated the DTPA shall be liberally construed and applied. *Id.* We must view Daugherty's actions with this legislative directive in mind. *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex.1998).

#### B. Producing Cause of Damages

##### 1. False, Misleading, or Deceptive Acts

In issue one, Daugherty challenges the jury's finding Daugherty engaged in false, misleading, or deceptive acts or practices, which were the producing cause of Jacobs'

damages.[1] The elements of this DTPA action are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these false, misleading, or deceptive acts constituted a producing cause of the consumer's damages. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a)(1) (Vernon Supp.2005); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). Any false, misleading, or deceptive act must also be relied upon by the consumer. TEX. BUS. & COM.CODE ANN. § 17.50(a)(1)(B).

██ Generally, an act is false, misleading, or deceptive if it has the capacity to deceive an average or ordinary person, even though that person may have been ignorant, unthinking, or credulous. *Doe*, 907 S.W.2d at 479–80; *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex.1978). The DTPA's purpose in making misrepresentations actionable is to ensure descriptions of goods or services offered for sale are accurate. *Doe*, 907 S.W.2d at 480; *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex.1980). Oral representations, whether made before or after the execution of an agreement, are not only admissible but may serve as the basis of a DTPA action. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985).

██ Daugherty, as the owner of K & K Vintage Automotive, may be held personally liable under the DTPA. If evidence exists an agent personally made misrepresentations under the DTPA, then that agent can be held personally liable. *Miller v. Keyser*, 90 S.W.3d 712, 718 (Tex. 2002). Agent liability is not affected by a person's position in the company. *Id.* at 717. Jacobs testified Daugherty told him K & K was the best in Houston, perhaps the best in the country, for repairing Jag-

uars. Daugherty agreed to warrant the work for one year on anything not quite right. Daugherty estimated the work would take two to three months to complete and would cost approximately $16,165. Jacobs testified he relied on Daugherty's representations, and over most of the thirteen months his Jaguar was at Daugherty's shop, he thought things were going fine. Jacobs believed it was too soon to know otherwise until he finally picked up his Jaguar.

When Jacobs picked up the Jaguar in September 2000, it was filthy, ran with a knock in the engine, and had a dim front light. Jacobs refused to take the car until Daugherty completed the repairs. In October 2000, Daugherty gave Jacobs 41 hours of free labor, but Daugherty still charged Jacobs for things Jacobs believed he had already purchased. Jacobs understood everything from the October and December 2000 invoices should have been under warranty, but he still paid the invoices. Jacobs wrote a check for the remaining balance owed in order to take the car with him. When Jacobs returned in January 2001 to finally pick up the Jaguar, the engine still knocked and there were problems with the electrical system.

Jacobs' expert, Allen Delong, testified about the repairs he did on Jacobs' vehicle after Jacobs delivered it to Delong in California and about the invoices Jacobs received from Daugherty. Delong testified the "correlation of repairs" completed by Daugherty did not make sense. Repairs were completed in the wrong order and with the wrong procedures. He testified he believed the repairs were not completed in the manner in which they were charged. He saw charges on invoices for things that

---

1. This issue relates to jury question four, which asked, "Did any of the parties named below, [sic] engage in any false, misleading or deceptive acts or practices that were a producing cause of damages to Jacobs?" The jury answered "yes" as to Daugherty.

should have been charged months prior. He also testified services were repeating themselves between invoices. He believed the invoices seemed made up to look pretty. He testified Daugherty overcharged for parts and labor, Daugherty charged labor for work that did not seem necessary and was the product of his own mistake, and the work completed was substandard. Delong believed and so testified the work completed by Daugherty should have cost no more than $17,000 and should have taken no more than three months.

■ At trial, Jacobs also had to introduce evidence that the false, misleading, or deceptive acts were the producing cause of his injuries. *See Doe,* 907 S.W.2d at 481; *Home Sav. Ass'n v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987). A producing cause is a substantial factor, which brings about the injury and without which the injury would not have occurred. *Doe,* 907 S.W.2d at 481; *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). Producing cause lacks the element of foreseeability embraced by the standard of proximate cause. *Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.-Dallas 1988, no writ); *Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 959 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.).

■ When analyzing producing cause, the plaintiff must have shown some unbroken causal connection between the allegedly deceptive act and the actual damages suffered. *See Prudential,* 896 S.W.2d at 161; *Bartlett v. Schmidt,* 33 S.W.3d 35, 39 (Tex.App.-Corpus Christi 2000, pet. denied). Texas courts require consideration of intervening and superceding causes. *See Doe,* 907 S.W.2d at 481; *Bartlett,* 33 S.W.3d at 39. If the defendant can demonstrate a new and independent basis for the plaintiff's injuries, such proof may negate the assertion that the defendant's acts were the producing cause of the plaintiff's injury. *See Doe,* 907 S.W.2d at 481.

■ Jacobs produced ample evidence at trial that Daugherty's faulty and incomplete repairs in concert with the duplicitous invoicing cost Jacobs approximately $18,000 and ten months of time more than Daugherty originally quoted. Jacobs testified he paid Daugherty approximately $35,000 by the time Jacobs picked up the Jaguar from Daugherty for the final time. In addition, Jacobs had to send the vehicle to another shop for completion of the repairs, costing approximately $10,000. At trial, Daugherty sought to emphasize a break in the causal connection between the repairs made at Daugherty's shop and Delong's observations of the Jaguar because of the time the Jaguar spent in Jacobs' garage and its transport by truck to California. Daugherty also testified any work to rebuild the engine was outside the original estimate and he performed different work than the work Delong performed. The jury's role as fact finder analyzes any alternative theory and gives it appropriate weight. *See GTE Mobilnet,* 61 S.W.3d at 615–16. The jury was within its province to disbelieve this alternate theory of causation.

■ The plaintiff must also show he detrimentally relied on the deceptive act. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 (Tex.2002). Jacobs testified he relied on Daugherty's representations when work began and throughout the time the Jaguar was at Daugherty's shop. The jury may choose to give this testimony whatever weight it deems appropriate. *See GTE Mobilnet,* 61 S.W.3d at 615–16.

After examining the entire record and considering the evidence both supporting and contrary to the challenged findings, the jury's answer to question four is not so contrary to the overwhelming weight and

preponderance of the evidence as to be clearly wrong and unjust.

### 2. *Unconscionable Conduct or Course of Action*

■ In issue two, Daugherty challenges the jury's finding Daugherty engaged in unconscionable conduct or course of action, which was the producing cause of Jacobs' damages.[2] An action may be maintained under the DPTA if the consumer has been adversely affected by any unconscionable action or course of action by any person. TEX. BUS. & COM.CODE ANN. § 17.50; *Sw. Lincoln–Mercury, Inc. v. Ross,* 580 S.W.2d 2, 5 (Tex.App.-Houston [1st Dist.] 1979, no writ). "Unconscionable action or course of action" is defined by section 17.45(5) of the Texas Business & Commerce Code as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, or experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM.CODE ANN. § 17.45(5).

■ Taking advantage of a consumer's lack of knowledge to a grossly unfair degree requires showing the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997); *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985). This will be determined by examining the entire transaction and not by inquiring whether Daugherty intended to take advantage of Jacobs or acted with knowledge or conscious indifference. *See Chastain,* 700 S.W.2d at 583–84. There must be a showing of what the consumer could have or would have done if he had known about the information. *Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616, 623 (Tex.App.-Tyler 2000, pet. denied). There would also need to be some showing of the consumer's knowledge, ability, experience, or capacity. *Id.* at 624.

Jacobs testified he never received any details about the work performed over the course of the thirteen months until litigation began. Once they were in litigation, the back up to the invoices did not match the work done according to the invoices. Jacobs testified Daugherty double charged Jacobs for some services and charged for what looked like Daugherty's errors. Daugherty added to the charges for work done outside K & K creating a profit on that work for Daugherty, but Jacobs testified he had been told these items would be a pass through at the cost charged by the outside shop, not an upcharge. Jacobs testified Daugherty charged for the same work three or four times and for work that was never done at all. Delong's testimony further supported Jacobs' testimony in great detail. Delong and Jacobs each testified about the details of every invoice produced by Daugherty. Each pointed out duplications, and Delong provided details about why those charges seemed inappropriate or duplicative. Important to this issue, Delong testified there is no way Jacobs could have understood these bills. In addition, the jury heard combined testimony between Jacobs and Delong that items Daugherty had claimed to have repaired were still not repaired when the Jaguar came to Delong's shop, and this testimony provides some evidence Daugherty failed to properly repair Jacobs' Jaguar. *See Mercedes–Benz of N. Am., Inc. v. Dickenson,* 720 S.W.2d 844, 855 (Tex. App.-Fort Worth 1986, no writ) (holding the repeated appearance of numerous defects in a car, some of which remained

---

**2.** This issue relates to jury question five, which asked, "Did any of the parties named below engage in any unconscionable action or course of action that was a producing cause of damages to Jacobs?" The jury answered "yes" as to Daugherty.

uncorrected when suit was filed, are at least some evidence appellant failed to properly repair car and provide or install proper replacement parts).

■ As with false, misleading, or deceptive acts, it is not enough that consumers merely prove unconscionable action or course of action, they must also prove those actions were the producing cause of actual damages. *Latham,* 972 S.W.2d at 69. As stated earlier, Jacobs has shown his damages were caused by Daugherty's actions, and those actions were not mitigated by any superceding or intervening causes alleged by Daugherty in his defense at trial or in this appeal. After examining the entire record and considering the evidence both supporting and contrary to the challenged finding, we hold the jury's answer to question five is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

### C. Fraud

■ In issue three, Daugherty challenges the factual sufficiency of the evidence supporting the jury's finding Daugherty committed fraud against Jacobs. A cause of action for fraud is proved by establishing: (1) a material misrepresentation was made; (2) was known to be false when made or was asserted without knowledge of its truth; (3) was intended to be acted upon; (4) was relied on; and (5) caused injury to the party who relied on the misrepresentation. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Formosa Plastics Corp. USA v. Presidio*

*Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 47–48 (Tex.1998).

■ The testimony by Jacobs and Delong about the bills sent to Jacobs by Daugherty establishes all the elements of common law fraud. Through his invoices, Daugherty represented what work his shop completed on Jacobs' Jaguar. Daugherty sent Jacobs invoices with the intent Jacobs would pay them as represented. Daugherty admitted during his testimony that he personally reviewed all the invoices before sending them to Jacobs. If there were mistakes in the billings, Daugherty would have detected those mistakes because, as he testified, that was his purpose in reviewing the invoices. A plaintiff may use direct or circumstantial evidence to prove a defendant knew of the falsity of a representation. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 526 (Tex.1998). By sending those invoices to Jacobs, Daugherty represented they were correct. Jacobs testified he relied on Daugherty's representations about the work being completed. Ultimately, Jacobs suffered injury because, as he learned during discovery prior to trial, Daugherty overcharged him by approximately $18,000, according to Jacobs' expert, Delong.

■ Daugherty contends this issue should be analyzed under the elements of fraud by non-disclosure. We disagree. The trial court charged the jury according to the elements of common law fraud by misrepresentation, not fraud by non-disclosure.[3] Therefore, whether Daugherty pos-

---

**3.** Jury question six defined fraud as: "A person makes a material misrepresentation, the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, the misrepresentation is made with the intention that it should be acted on by another, and the other party acts in reliance

on the misrepresentation and thereby suffers injury." The elements of fraud by non-disclosure are: (1) a party fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take

sessed a duty to disclose information to Jacobs is irrelevant to this analysis. Having reviewed all the evidence supporting and contrary to the finding, we hold the jury's answer to question six is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

### D. Knowing Conduct

Finally in issue four, Daugherty challenges the factual sufficiency of the evidence supporting the jury's finding Daugherty acted knowingly.[4] "Knowingly" means "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Tex. Bus. & Com.Code Ann. § 17.45(9). Actual awareness does not mean merely that a person knows what he is doing. *St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc.*, 974 S.W.2d 51, 53–54 (Tex.1998). Rather, it means that a person knows what he is doing is false, deceptive, or unfair. *Id.* at 54. "In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *Id.* Actual awareness is more than conscious indifference to another's rights of welfare. *Id.*

Daugherty testified he reviewed every invoice before sending it to Jacobs to ensure no mistakes were made and all billings were correct. Daugherty's own testimony, coupled with Delong's adamant testimony about the mistakes, overcharges, and duplications on the invoices provided the jury with evidence Daugherty acted knowingly when Daugherty engaged in false, misleading or deceptive acts or practices, and in an unconscionable action or course of action, both of which were producing causes of damages to Jacobs. We hold the jury's answer to question six is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

## II. Motion for Continuance

In Daugherty's fifth issue, he asserts the trial court abused its discretion by denying his motion for continuance when his expert witness was unable to attend trial. The granting or denying of a motion for continuance rests within the sound discretion of the trial court. *State v. Crank*, 666 S.W.2d 91, 94 (Tex.1984); *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex.1963). We will not disturb a trial court's ruling absent abuse of discretion. *Crank*, 666 S.W.2d at 94; *Hycarbex, Inc. v. Anglo–Suisse, Inc.*, 927 S.W.2d 103, 112 (Tex.App.-Houston [14th Dist.] 1996, no writ). In deciding whether the trial court abused its discretion, the appellate court will not substitute its own judgment for that of the trial court, but it only decides whether the trial court's action was arbitrary, unreasonable, and without reference to any guiding rules and principles. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d

---

some action by failing to disclose that fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Custom Leasing, Inc. v. Tex. Bank & Trust Co. of Dallas*, 516 S.W.2d 138, 142 (Tex.1974); *see also Fogus v. Moreno*, No. 04–03–00679–CV, 2004 WL 1562068, at *3 (Tex.App.-San Antonio July 14, 2004, no pet.) (not designated for publication) (comparing the elements of fraud by misrepresentation to fraud by non-disclosure).

4. Having answered "yes" to questions four and five, the jury considered question six: "Did any of the parties named below engage in such conduct knowingly?" The jury answered "yes" as to Daugherty.

630, 635 (Tex.1986); *In re E.L.T.,* 93 S.W.3d 372, 374–75 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

Texas Rules of Civil Procedure 251 and 252 govern Daugherty's motion for continuance for purposes of securing testimony. *See In re Uvalle,* 102 S.W.3d 337, 340–41 (Tex.App.-Amarillo 2003, no pet.). Rule 251 requires a court to grant a continuance for sufficient cause supported by affidavit, consent of the parties, or operation of law. Tex.R. Civ. P. 251. Under rule 252, if the basis for the application is want of testimony, the applicant "shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of the failure, if known." Tex.R. Civ. P. 252.

■■■ The absence of a material witness is sufficient cause for granting a continuance, but only if the party used proper diligence to procure the testimony of the witness. *Fritsch v. J.M. English Truck Line,* 151 Tex. 168, 170, 246 S.W.2d 856, 858 (1952); *Lynd v. Wesley,* 705 S.W.2d 759, 764 (Tex.App.-Houston [14th Dist.] 1986, no writ). Daugherty's bill of exceptions asserts Daugherty's expert witness was testifying in Illinois at another trial when this trial was set to begin. Daugherty filed a motion for continuance to move the trial date from the 7th to the 18th of February. The court granted that motion. On the date trial began, Daugherty's witness informed Daugherty he was unable to travel from his home in Arizona to Houston on the revised date because his location at the time prevented him from traveling on such short notice. Daugherty argued the inability to call the expert witness prejudiced his case, as the jury would be unable to hear testimony about the reasonableness of the work performed by Daugherty on Jacobs' Jaguar. However, the record contains no affidavit in support of Daugherty's oral assertions. If a motion for continuance is not verified or supported by affidavit, we will presume the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986); *Ohlhausen v. Thompson,* 704 S.W.2d 434, 436–37 (Tex.App.-Houston [14th Dist.] 1986, no writ).

■■■ Daugherty failed to show why the absent witness's testimony could not have been taken by deposition. *See Gregg v. Cecil,* 844 S.W.2d 851, 853 (Tex.App.-Beaumont 1992, no writ); *see also Green v. State,* 589 S.W.2d 160, 163 (Tex.App.-Tyler 1979, no writ) (holding motion for continuance failed to show reasonable diligence when testimony could have been obtained by taking deposition); *Sanders v. Kan. City Life Ins. Co.,* 152 S.W.2d 506, 508 (Tex.App.-Amarillo 1941, writ ref'd) (holding trial court did not abuse its discretion and appellant did not show due diligence when the application failed to show any attempt to secure the deposition of the missing witness). The requirement for diligence does not subside simply because the unavailable witness is a party's designated testifying expert at trial. *See Stiles v. Royal Ins. Co. of Am.,* 798 S.W.2d 591, 596–97 (Tex.App.-Dallas 1990, writ denied) (upholding trial court's denial of motion for continuance when treating physician was not available for trial and appellant did not use proper due diligence to obtain testimony from that witness through subpoena or deposition).

■■■ Daugherty argues defense counsel's statements and bill of exceptions at trial should be considered evidence in support of the motion because Jacobs did not object. We disagree. First, unsworn statements by counsel are not evidence. *In re Butler,* 987 S.W.2d 221, 225 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Second, trial counsel's statement explain-

ing the reasons for the motion to the trial court does not meet the requirements of rules 251 and 252. *See In re Uvalle,* 102 S.W.3d at 341 (holding trial counsel's statements added little to the written motion and fell short of meeting the requirements of rule 252); *Hawthorne v. Guenther,* 917 S.W.2d 924, 929–30 (Tex.App.-Beaumont 1996, writ denied) (holding appellant's attorney's hearsay recital of matters told to him by appellant's drug counselor did not rise to the level of an affidavit to support a motion for continuance). Third, rules 251 and 252 do not require Jacobs to object in order to force Daugherty to comply with those rules. Rules 251 and 252 clearly recite the requirements necessary for a trial court to consider a motion for continuance, and none of those requirements force the *party opposing the motion to* lodge an objection with the trial court under any circumstance. *See* TEX.R. CIV. P. 251, 252.

Before this trial began, the trial court granted two prior motions for continuance. The parties agreed to the first motion, and Daugherty filed the second motion. With the second motion, Daugherty included an affidavit from his expert detailing the reasons for the expert's inability to travel to Houston for trial, specifically the expert was in Illinois testifying at a different proceeding. Daugherty also made the third motion at issue on appeal, but he failed to include an affidavit. Daugherty clearly demonstrated his understanding of the rules and ability to comply with them on at least one prior occasion. If parties choose to forego their rights under the rules and resort to other less effective and less certain means of procuring the testimony of a material witness, they must be held to the risk they will be put to trial without the benefit of the testimony. *Fritsch,* 246 S.W.2d at 859. Daugherty has failed to rebut the presumption the trial court did not abuse its discretion in denying the

motion for continuance. Therefore, we overrule Daugherty's fifth issue.

### III. Attorney's Fees

In Daugherty's sixth issue, he complains the trial court's award of attorney's fees for appeal to this court and to the supreme court was improper because the court did not condition the award on the success of such appeal. Jacobs correctly agrees. The trial court should have awarded attorney's fees to Jacobs conditioned upon successful appeal to this court and the supreme court. *Mem'l City Gen. Hosp. Corp. v. Cintas Corp.,* 679 S.W.2d 133, 139 (Tex.App.-Houston [14th Dist.] 1984, no writ). However, the trial court's error in the judgment does not mandate reversal when a portion of the judgment relating to the manner of the award of attorney's fees was unauthorized. *Id.* The judgment may be modified on appeal so as to correct the award. *Id.* Accordingly, we modify the trial court's judgment to condition the award of attorney's fees on appeal to Jacobs' success on appeal.

### CONCLUSION

Having considered Daugherty's issues on appeal, we overrule issues one through five and sustain issue six. We affirm the judgment of the trial court as modified.