Opinion issued June 21, 2007











 







In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00568-CV

__________


SANDRA MCKAY, Appellant


V.


DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee






On Appeal from the 313th District Court

Harris County, Texas

Trial Court Cause No. 2004-10368J






MEMORANDUM OPINION

 In this accelerated appeal, (1) appellant, Sandra McKay, challenges the trial
court's decree, entered after a jury trial, terminating her parental rights to her minor
children, J.J.E. and V.M.M. In four points of error, McKay contends that the trial
court's finding that her appeal is frivolous was improper, the evidence is legally and
factually insufficient "to support involuntary termination of [McKay's] parental rights
absent jury opportunity to hear expert testimony from [McKay's] doctor and
therapist," the trial court abused its discretion in denying McKay the opportunity to
have her expert witnesses testify, and appellee, the Department of Family and
Protective Services ("DFPS) "discriminated against [McKay] based on her disability
by failing to reasonably accommodate." 

 We affirm. 

Factual and Procedural Background


 Sandra McKay has three children. In December 2004, after DFPS received a
referral alleging "neglectful supervision" by McKay, DFPS filed its petition seeking
to terminate McKay's parental rights to two of her children, J.J.E. and V.M.M., both
of whom are classified as having special needs. DFPS further alleged in its petition
that, prior to seeking termination of McKay's parental rights, McKay had refused
DFPS's offers of home assistance. 

 At trial, McKay testified that she is mentally retarded, reads on "a second grade
level," has been diagnosed as having a mood disorder with psychotic seizures, and
takes multiple medications. McKay stated that J.J.E. is mentally retarded, autistic,
and has the capability to lose control and become violent, and V.M.M. is mildly
retarded. Both J.J.E. and V.M.M. were enrolled in special education. McKay agreed
that sometime around October 2000, police officers found J.J.E., who at that time was
approximately four years old, and V.M.M., who at that time was approximately three
years old, in diapers and alone near a busy street. Again, in March 2001, J.J.E. and
V.M.M. were found alone walking along a busy street. In December 2004, a DFPS
investigator visited her house after J.J.E. was found with a bloody foot, and McKay
told the investigator that she did not have to tell her anything and that she was
moving. After this incident, DFPS filed suit and placed J.J.E. and V.M.M. in foster
care. McKay agreed that her doctor had told her she had an IQ of 40.

 Tatiana Dove, the DFPS investigator who met with McKay, testified that after
she received a report of neglectful supervision in December 2004, she met with J.J.E.
and V.M.M., who were dirty and unkempt. Dove stated that both children had mental
deficits and that she had received information that they fought constantly and no one
could stop them. After Dove spoke with officials from the children's school, she
became concerned that McKay could not provide for their basic needs. Dove then
visited McKay's apartment, which was in poor condition and had an unbearable odor. 
Dove offered McKay family based services in an attempt to keep the children at
home, but McKay refused and told Dove that she was moving to Chicago. DFPS then
decided to remove the children based on concerns for their welfare. 

 Diane Gillespie, the children's life skills teacher, testified that the children
came to school in an unkempt condition, with shoes on the wrong feet, and roaches
in their backpacks. The school purchased clothing for the children, and kept this
clothing at the school to wash. Gillespie also had concerns that the oldest child in the
McKay household, who was also of elementary school age, was having to taking care
of J.J.E. and V.M.M. Dorothy Florian-Lacy, the children's therapist, testified that
since the children have been in foster care, their behavior has improved dramatically. 
She also believed it to be in the children's best interest not to be placed with McKay.

 After the conclusion of the jury trial, the trial court signed a decree terminating
McKay's parental rights to J.J.E. and V.M.M. In the decree, the trial court found, as
the basis for the termination of McKay's parental rights, that McKay knowingly
placed or knowingly allowed the children to remain in conditions or surroundings
which endangered the physical or emotional well-being of the children, (2) McKay
engaged in conduct or knowingly placed the children with persons who engaged in
conduct which endangered the physical or emotional well-being of the children, (3) and
termination of the parent-child relationship between McKay and the children was in
the children's best interest. (4) The trial court also found that McKay has a mental or
emotional illness or a mental deficiency that renders her unable to provide for the
physical, emotional, and mental needs of the children and will continue to render her
unable to provide for the children's needs until their 18th birthday, despite at least six
months of reasonable efforts to return the children to the mother. (5)

Frivolousness Finding

 In her first point of error, McKay contends that the trial court's finding that her
appeal is frivolous was improper. McKay asserts that she timely filed a statement of
appellate points pursuant to section 263.405(i) (6)
 of the Texas Family Code and that the 
the trial court "timely held a hearing under [section] 263.405(d)," after which it found
her appellate points to be frivolous. See Tex. Fam. Code Ann. § 263.405(d), (i)
(Vernon Supp. 2006). McKay complains that her appellate points have merit and are
not intended to promote waste of time or resources and that her appeal should be
allowed to proceed.

 Although McKay asserts that the trial court conducted a hearing pursuant to
section 263.405 and made a finding that her appeal is frivolous, as conceded by
DFPS, nothing in the record indicates that such a hearing was held or that the trial
court actually made a frivolousness finding under section 263.405. Accordingly, we
need not address McKay's first point of error, and we proceed to address her
remaining points. 

Testimony from McKay's Witnesses

 In her second and third points of error, McKay contends that the evidence is
legally and factually insufficient "to support involuntary termination of [McKay's]
parental rights absent jury opportunity to hear expert testimony from [McKay's]
doctor and therapist" and that the trial court abused its discretion by denying McKay
the opportunity to present testimony from her expert witnesses, Dr. Eilieen Starbranch
and Malikah Marrus, L.M.S.W. (7) 

 In her brief, McKay avers that she made a timely request to secure the
attendance of Starbranch and Marrus, both of whom McKay contends were properly
subpoenaed, and that Starbranch and Marrus would have provided crucial testimony
as to McKay's ability to parent and the children's best interest. McKay complains
that without such testimony, "the jury could not hear additional information about the
extent of [McKay's] mental deficiencies, thereby preventing a meaningful assessment
of termination." 

 At trial, following McKay's presentation of testimony from her mother, the trial
court requested that McKay present her next witness. McKay stated that her next
witness had been subpoenaed, but that there was "nobody here." When the trial court
asked McKay if she had any other witnesses, McKay identified only "Anika Norris,
the licensed master social worker." (8) McKay did not identify any other witnesses,
such as Starbranch, nor did she provide any description concerning the substance of
Marrus's or Starbranch's testimony. During an exchange with the trial court, McKay
again conceded that she did not have "any witnesses that are here," but asserted that
they had "been subpoenaed." When the trial court asked McKay if she was "calling
any more witnesses today," McKay agreed that she had "nobody else to call," and the
trial court declared that "[r]espondent rests." Although McKay responded, "I don't
rest Judge," the trial court told McKay that "[y]ou rest when you don't have any
witnesses" and further instructed her to "[h]ave a seat." At this point, McKay made
no further objections or motions.

 We review a trial court's denial of a motion for continuance for an abuse of
discretion. Daugherty v. Jacobs, 187 S.W.3d 607, 618 (Tex. App.--Houston [14th
Dist.] 2006, no pet.). A trial court abuses its discretion if its action is arbitrary,
unreasonable, and without reference to any guiding rules and principles. Id. at 618. 
Texas Rules of Civil Procedure 251 and 252 govern motions for continuance for
purposes of securing testimony. Id. at 619. Rule 251 provides that "[n]o application
for a continuance shall be heard before the defendant files his defense, nor shall any
continuance be granted except for sufficient cause supported by affidavit, or by
consent of the parties, or by operation of law." Tex. R. Civ. P. 251. If the ground for
the application is "want of testimony," the applicant "shall make affidavit that such
testimony is material, showing the materiality thereof, and that [s]he has used due
diligence to procure such testimony, stating such diligence, and the cause of failure,
if known." Tex. R. Civ. P. 252. Furthermore, if the continuance is sought based on
"[t]he absence of a witness," the applicant "shall state the name and residence of the
witness, and what he expects to prove by him; and also state that the continuance is
not sought for delay only, but that justice may be done." Id. Finally, "the absence of
a material witness is sufficient cause for granting a continuance, but only if the party
used proper diligence to procure the testimony of the witness." Daugherty, 187
S.W.3d at 619. 

 Although McKay asserts that both Starbranch and Marrus were properly
subpoenaed, there is nothing in the record to substantiate these claims other than
assertions by McKay's appellate counsel. Nevertheless, even McKay concedes that
"no proper oral motion for continuance was made," and there is also no written
motion for continuance contained in the record, nor is there any explanation, either
written or oral, as to the content of Marrus's or Starbranch's expected testimony. 
Although, as McKay asserts, the trial court might have continued the trial "on its own
motion" in order to accommodate McKay's two expert witnesses, we cannot say that
the trial court abused its discretion in not doing so. Accordingly, we hold that the
evidence was not rendered legally and factually insufficient to support the termination
of McKay's parental rights based on the absence of "expert testimony from
[McKay's] doctor and therapist." We further hold that the trial court did not abuse
its discretion "by denying McKay the opportunity to present testimony from her
expert witnesses."

 We overrule McKay's second and third points of error. 

Discrimination

 In her fourth point of error, McKay contends that DFPS "discriminated against
[her] based on her disability by failing to reasonably accommodate." McKay asserts
that the trial court denied her plea in abatement, which she filed on the basis of the
Americans with Disabilities Act of 1990. See 42 U.S.C. §§ 12101-12113. McKay
further asserts that the ADA "may provide an affirmative defense in the context of
termination" and that "[i]f in fact [DFPS] did not reasonably accommodate [her]
through a tailored service plan, then [DFPS] has discriminated against [McKay]
because of her disability." (9) 

 In In re C.M., this Court held that an ADA complaint in the context of a
parental termination constitutes an affirmative defense and that a parent asserting
DFPS's noncompliance with the ADA as an affirmative defense must plead, prove,
and secure findings sustaining such an affirmative defense. See 996 S.W.2d 269, 270
(Tex. App.--Houston [1st Dist.] 1999, no pet.); see also In re B.L.M., 114 S.W.3d
641, 649 (Tex. App.--Fort Worth 2003, no pet.). (10) 

 Here, although McKay asserts that she filed a plea in abatement asserting the
ADA as defense to the termination proceedings, McKay concedes that there is no
such filing contained in the record. Furthermore, McKay did not plead this
affirmative defense in her answer or in any other document filed with the trial court. 
There is also no reporter's record from any hearing on a plea in abatement filed on
ADA grounds, and there is nothing in the record to indicate that McKay ever objected
to the termination proceedings on ADA grounds. Accordingly, we hold that in
failing to plead, prove, and secure findings sustaining an affirmative defense related
to DFPS's alleged noncompliance with the ADA, McKay has waived this issue for
our review. See Tex. R. App. P. 33.1.

 We overrule McKay's fourth point of error.


 Conclusion


 We affirm the trial court's decree.



 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


1. See Tex. Fam. Code Ann. § 263.405(a) (Vernon Supp. 2006).
2. See Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp. 2006).
3. See id. § 161.001(1)(E) (Vernon Supp. 2006).
4. See id. § 161.001(2) (Vernon Supp. 2006).
5. See id. § 161.003 (Vernon 2002).
6. The record indicates that McKay filed her statement of points.

7. Despite labeling her second point of error as a challenge to the sufficiency of the
evidence, McKay does not actually challenge the sufficiency of the evidence to
support the trial court's findings under sections 161.001 and 161.003 to support the
termination of her parental rights. See id. §§ 161.001, 161.003. She also does not
allege that such findings are insufficient to support termination of her parental rights. 
In fact, in regard to her "parental acts," McKay concedes that "should lack of legal
and factual sufficiency as a matter of law not be found" based on her complaint that
her two expert witnesses were not allowed to testify, "the legal and factual sufficiency
of the testimony confined to the record as a whole should be overwhelmingly in favor
of involuntary termination with no further discussion of parental acts necessary" and
"with no further discussion of best interest necessary." Thus, in their briefing, neither
McKay nor DFPS discuss in any significant detail the specific evidence presented at
trial supporting the trial court's findings necessary for termination under sections
161.001 and 161.003. Accordingly, although McKay raises "sufficiency" points, we
do not discuss in detail the sufficiency of the evidence to support the trial court's
specific findings, and instead discuss McKay's specific arguments on appeal
concerning the absence of testimony from her expert witnesses. See Tex. R. App. P.
47.1. 
8. Although the reporter's record identifies McKay's social worker as "Anika Norris,"
McKay's appellate briefing identifies the social worker as Malikah Marrus. We refer
to this witness using the latter designation.
9. McKay concedes that "a more tailored plan may not have been capable of being
devised by [DFPS] given [McKay's] composite IQ of 40 or 50" and that "if tailoring
such a service plan for [her] is futile at best (based on her reported IQ score), then this
ADA issue may not apply."
10. DFPS notes that the Beaumont Court of Appeals has, in accord with other foreign
jurisdictions, specifically declined to recognize an affirmative defense in parental
rights termination cases arising out of noncompliance with the ADA. See In re S.G.S.,
130 S.W.3d 223, 229 (Tex. App.--Beaumont 2004, no pet.).