

# NUMBERS 13-11-00790-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## EX PARTE THE CITY OF CORPUS CHRISTI, TEXAS

On appeal from the 94th District Court
of Nueces County, Texas.

# OPINION

**Before Justices Garza, Benavides, and Perkes**
**Opinion by Justice Perkes**

The City of Corpus Christi ("the City") files this appeal challenging a final judgment ordering that it take nothing by its suit and declaring that the Aquarius Road Project proposed by the City did not comply with the language of a 2008 bond proposition approved by voters. By four issues, the City argues: (1) the question submitted to the jury was one of law and should not have been submitted to the jury; (2) the trial court improperly denied the City's judgment notwithstanding the verdict; (3) the trial court

improperly admitted evidence; and (4) the final judgment does not comply with the pleadings. We reverse and render.

## I. GENERAL BACKGROUND

On August 19, 2008, the City Council passed an ordinance ordering a special election for the purpose of authorizing "the issuance of obligations of the City supported by ad valorem taxes for needed public improvements." Proposition 1 contemplated numerous road projects, including a new extension of Aquarius Street from Dasmarinas to Commodore (the "Aquarius Road Project"), which is the subject of this dispute. More specifically, Proposition 1 submitted for the voters' determination:

> Shall the City Council of the City of Corpus Christi, Texas, be authorized to issue . . . public securities of the City . . . for the construction of permanent street improvements throughout the City, including, without limitation, construction, reconstructing, restructuring, and extending the streets, thoroughfares, sidewalks, streetscapes, collectors, and storm drains in said City, INCLUDING:
>
> . . .

\* AQUARIUS STREET – DASMARINAS TO COMMODORE

Proposition 1, as drafted, called for the creation of a new street that would connect Aquarius Street to Dasmarinas and Commodore Streets at some undefined point. The ordinance does not include any further descriptive language for the Aquarius Road Project, and it does not incorporate any other plats, plans, or other documents. No other ordinance or resolution was passed authorizing or approving any other proposition to be presented to the voters for the special election.

On November 4, 2008, the City held its special election and voters approved Proposition 1. On November 11, 2008, the City approved an ordinance declaring that all

2

of the Propositions included in the special election passed. Thereafter, the City issued "General Improvement Bonds" to be used for the projects included in the special election.

In 2011, the City contracted with Urban Engineering to perform the design work for the Aquarius Road Project, including preparation of road and utility designs. The Urban Engineering design plans, however, did not use the existing right-of-way to connect the Aquarius Street intersection on Dasmarinas to the Aquarius Street intersection on Commodore. Rather, the design plans contemplated a new right-of-way which would connect the Aquarius Street intersection on Dasmarinas to a future intersection a short distance down on Commodore. Their design plans also called for abandoning the existing right-of-way, and running the new Aquarius Street extension and utilities through the previously platted, but undeveloped, portion of an existing subdivision.

Mike Hummell and David Barabino[1] filed a lawsuit ("Hummell lawsuit") seeking injunctive relief "to prohibit the City of Corpus Christ [sic] from moving forward in any way with the construction of the sixty-foot boulevard that has been improperly proposed for Aquarius between Dasmarinas and Commodore." In addition, they alleged that the City violated due process because it "ignored and consciously disregarded its own Charter, its Comprehensive Plan, its Transportation Plan, its Future Land Use Plan[,] and its Platting Ordinance . . . ." They further generally alleged that the ordinance calling for the special election "utilized ambiguous language, Aquarius – Dasmarinas to Commodore", but did not otherwise indicate how the language was ambiguous.

---

[1] Barabino filed a notice of nonsuit in the trial court prior to the entry of the final judgment, and is not a party to this appeal.

The City subsequently filed a lawsuit ("City lawsuit") requesting an expedited declaratory judgment pursuant to Chapter 1205 of the Texas Government Code (Expedited Declaratory Judgment Act). *See* TEX. GOVT. CODE ANN. § 1205.151 (West 2000). The City sought to validate the 2008 bond election, the bonds issued and to be issued, and the resulting contracts and related transactions. In addition, the City sought a declaration that "all proposed actions to be taken by the City in the project involving the extension of Aquarius Street between Dasmarinas and Commodore Street are legal and valid." The City also filed a motion to enjoin the prosecution and maintenance of any proceeding contesting such matters, including the Hummell lawsuit, and to consolidate all such actions in the City's lawsuit. *See id.* § 1205.061 ("Court's Power to Enjoin Other Proceedings"). The City's motion was granted.

During the trial, the jury found that the "Aquarius Road Project that the City of Corpus Christi proposes to construct [does not] comply with the language of the 2008 Bond Proposition 1 approved by the voters." No other question was submitted for the jury's consideration.

The trial court entered final judgment: (1) ordering that the City take nothing by its lawsuit ("Hummell lawsuit"); and (2) declaring that the Aquarius Road Project that the City proposes to construct does not comply with the language of the 2008 Bond Proposition 1 approved by voters. The final judgment, however, does not grant any injunctive relief for any party, but rather denies all other relief requested. The trial court denied the City's motion for judgment notwithstanding the verdict, and severed all claims other than those asserted regarding the Aquarius Road Project. This appeal ensued.

4

## II.  JUDGMENT NOTWITHSTANDING THE VERDICT

By its first issue, the City complains that the question submitted to the jury is a question of law that the trial court should have decided.[2]   By its second issue, the City argues the trial court erred by denying its motion for judgment notwithstanding the verdict because there is no evidence that the proposed Aquarius Road Project did not comply with the 2008 bond proposition which was approved by the voters.   The City contends that the uncontroverted evidence at trial conclusively shows the proposed Aquarius Street extension would connect Dasmarinas to Commodore, as required by the City's ordinance.

### A.    Standard of Review and Applicable Law

The denial of a motion for judgment notwithstanding the verdict (hereinafter "JNOV") is reviewed under a legal sufficiency standard.   *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009).   We "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."   *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007).   We must uphold the jury's finding if more than a scintilla of competent evidence

---

[2]   We note that, in relevant part, the trial court's final judgment provides as follows:

Based on the jury finding, the Court makes the following orders:

IT IS ORDERED that the City of Corpus Christi take nothing by its suit;

IT IS FURTHER ORDERED and the Court declares, that the Aquarius Road Project that the City of Corpus Christi proposes to construct does not comply with the language of the 2008 Bond Proposition approved by the voters . . .

All other relief requested and not severed is DENIED.

On appeal, we construe the declaration of noncompliance with the bond language as being based on the jury's verdict as opposed to an independent conclusion of law the trial court made.

5

supports it. *Tanner*, 289 S.W.3d at 830. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Thus, in order to establish that it was entitled to JNOV, the City must show that the evidence conclusively proved that the Aquarius Road Project complied with the 2008 bond language, and that no reasonable factfinder was free to think otherwise. *See Tanner*, 289 S.W.3d at 830. "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816.

Courts use the same rules when construing municipal ordinances as those used when construing statutes. *City of San Antonio v. Headwaters Coalition, Inc.*, 381 S.W.3d 543, 551 (Tex. App.—San Antonio 2012, pet. denied); *see also Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). Courts construe statutes and ordinances as a matter of law. *Headwaters Coalition*, 381 S.W.3d at 551; *Arredondo v. City of Dallas*, 79 S.W.3d 657, 667 (Tex. App.—Dallas 2002, pet. denied). When the construction of municipal ordinances is involved, as when statutory construction is involved, our primary duty is to carry out the intentions of the municipality's legislative body. *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex. 1962); *City of Dallas v. Blanton*, 200 S.W.3d 266, 277 (Tex. App.—Dallas 2006, no pet.). We look first to the plain meaning of the words. *Wende*, 92 S.W.3d at 430. If the language is unambiguous, we interpret the ordinance using its plain language unless that interpretation leads to absurd results. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d

6

170, 177 (Tex. 2004).

Proceeds of bonds voted by the people must be used for the purposes for which they were voted. *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936); *Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670, 676 (Tex. App.—Dallas 2002, pet denied). However, the law does allow a governing body the right to exercise its judgment and discretion. *Lewis*, 89 S.W.2d at 463. A city violates its contract with the voters only if it uses tax proceeds approved by voters in a way the voters did not approve. *Putnam v. City of Irving*, 331 S.W.3d 869, 878 (Tex. App.—Dallas 2011, pet. denied).

**B.     The Evidence**

Pete Anaya is the director of the City's engineering services department. He testified that the engineering services department is charged with the execution of the Aquarius Road Project. According to Anaya, the City's proposed road extension, Aquarius Street, would run from Dasmarinas to Commodore. He opined that the proposed plans comply with the November 2008 bond language, as approved by the voters. According to Anaya, the City's plan is the most direct route to get a fire engine from the fire station to any structure on Aquarius Street that might be in need of a fire truck, and that it is the best option with respect to public safety and costs.

Hummell was a City Council member at the time the special election was considered and passed. He testified that he did not agree with Anaya that the City's plan conformed to the bond issue language, and stated that he has not seen any ordinance that would approve any alternate alignment plan for Aquarius Street. On cross

7

examination, Hummell agreed that Anaya's trial drawing shows "Aquarius starting right here at Dasmarinas ending at Commodore is Aquarius Street from Dasmarinas to Commodore." Hummell also testified, however, that directly connecting the two ends of Aquarius Street is the only reasonable interpretation of the bond language under the conditions as they existed at the time the public voted on the bond election. In support, he offered three development plans that were admitted into evidence that the City Council had adopted several years prior to the ordinance calling for the special election: (1) Mustang-Padre Island Area Development Plan; (2) Urban (Unified) Transportation Plan; and (3) Corpus Christi Future Land Use Plan. Each of the plans shows a connection of the Aquarius Street intersection on Dasmarinas to the Aquarius Street intersection on Commodore.

Pat Veteto, an engineer with RVE, an engineering firm, testified the City contracted with RVE to prepare "the cost estimate prior to the [2008] bond program, [but] not the road design." RVE followed the "preliminary plat layout" that was established years earlier by the Urban (Unified) Transportation Plan.

Rhodes Urban, an engineer with Urban Engineering, testified his firm did the design and re-plat for the Aquarius Road Project. Urban Engineering prepared the Right-of-Way Easement and Drainage Easement and related design work for this project. Prior to their proposed realignment of Aquarius Street, there was a platted alignment in place, going back to 1974. Urban testified, however, that the platted area, the Island Fairway Estates, was never built and that it is still in its natural state. He agreed that the

Aquarius Street realignment is an extension of Aquarius Street from Dasmarinas to Commodore, and that it complies with the bond language.

## C. Discussion

The interpretation of the ordinance at issue in this case concerns a question of law.[3] The city's contract with the voters consists solely of the bond proposition itself, and does not include extraneous documents and representations that were not expressly made to the voters with respect to the bond issue. *See Taxpayers for Sensible Priorities*,[4] 79 S.W.3d at 675. Our focus is solely on whether the City was attempting to use tax proceeds approved by voters in a way not approved by voters. *Id.* at 676; *Headwaters Coalition, Inc.*, 381 S.W.3d at 552.

In *Headwaters Coalition*, the San Antonio Court of Appeals stated that although citizens were entitled to rely upon a city's representation leading up to a bond election, the proposition voted upon did not state with specificity how the improvements at issue would be accomplished. 381 S.W.3d at 554. The court ultimately concluded that it was within the city's discretion to determine the actual plan to be accomplished under the bond ordinance. *Id.*

---

[3] We conclude that it was error for the trial court to submit this question of law to the jury. Because the way to remedy an improper submission to the jury is through a motion for a judgment notwithstanding the verdict, we proceed directly to the second issue.

[4] *In Taxpayers for Sensible Priorities v. City of Dallas*, the plaintiffs alleged voters relied on extraneous documents printed and distributed by City of Dallas staff without city council approval when they voted to approve certain bond language. *See* 79 S.W.3d 670, 672–73 (Tex. App.—Dallas 2002, pet. denied). By contrast, in this case, Hummell argues development plans the City formally adopted prior to the vote on the bond language limit the City's placement of the road, but no evidence in the appellate record shows those limitations and that such representations were made to the voters. Though Hummell offered additional evidence on this point in the trial court, the City objected to its admission and the trial court sustained the objection. No cross-point is presented on appeal concerning the exclusion of evidence.

Similarly, here, the bond proposition states it is for the construction of permanent street improvements throughout the City, including "Aquarius Street – Dasmarinas to Commodore." The evidence conclusively shows that the proposed Aquarius Road Project provides for an extension of Aquarius between Dasmarinas and Commodore, and that it complies with the ordinance's unambiguous language. Although Hummell argues that we should consider other maps and plans when we interpret the bond language, the City's ordinance for the special election did not specifically include or incorporate any earlier map or plans, and we are constrained by existing law from considering extraneous documents and representations. *See Taxpayers for Sensible Priorities*, 79 S.W.3d at 675. Thus, the trial court erred by not granting the City's judgment notwithstanding the verdict. We sustain issues one and two.

In view of our holding, the City's remaining issues are not dispositive and will not be addressed. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The trial court's judgment is reversed and we render judgment (1) declaring that the Aquarius Road Project the City proposed to construct complies with the language of the 2008 Bond Proposition 1 approved by voters; and (2) Hummell take nothing by his lawsuit.

GREGORY T. PERKES
Justice

Delivered and filed the
31st day of July, 2013.

10