

# NUMBER 13-24-00166-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

THE GALA SPECIAL EVENTS, LTD.,
AND VICTOR BARRERA,                                        Appellants,

v.

CHRISTIAN TIJERINA AND
JOE ZACARIAS,                                              Appellees.

---

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 10
## OF HIDALGO COUNTY, TEXAS

---

# MEMORANDUM OPINION

### Before Justices Silva, Peña, and Fonseca
### Memorandum Opinion by Justice Fonseca

Appellants The Gala Special Events, Ltd. and Victor Barrera appeal the trial court's

judgment wherein the court found appellees should recover the contract amount due to

its illusoriness and the jury found appellants liable for committing an unconscionable act

under the Texas Deceptive Trade Practices Act (DTPA) in a dispute arising out of a

contract for a wedding reception that was cancelled due to the COVID-19 pandemic. We uphold the trial court's order finding the contract illusory. We also find that the evidence supporting the jury's verdict was legally insufficient and that the trial court erred in denying appellants' motion for judgment notwithstanding the verdict (JNOV). Accordingly, we affirm the trial court's judgment in part and reverse and render in part.

## I. BACKGROUND

Appellees Christian Tijerina and Joe Zacarias were engaged to be married and sought a venue for their wedding reception. On July 31, 2019, Tijerina visited appellants' business called "The Gala Special Events" (The Gala) and met with Saida Barrera, wife of the owner Victor. They discussed appellees' needs for the reception. After their discussion, Tijerina signed a contract for the reception to be held at the venue on May 2, 2020. Saida testified that The Gala had used the same form contract since 2012. Tijerina did not have a lawyer with her when the contract was executed.

According to Tijerina, Saida did not explain most of the contract to her, discussing it for only five to ten minutes. Saida and Tijerina did not discuss the contract's liquidated damages and force majeure provisions. The contract contained the following relevant cancellation provisions: "[(]1) If the client cancels or rebooks the date or [T]he Gala terminates for any reason the scheduled special event, the client loses automatically all deposits, security deposit[,] and any other payments made up to the date of the cancellation or termination"; and "(3) If for any reason The Gala must cancel for a unseen natural disaster, or emergency The Gala cannot be held responsible and there will be no reimbursements, nor rescheduled event." Tijerina testified she would not have signed the contract if she were made aware of these provisions and stated that Saida's only

2

explanation regarding cancellation was that the sole way appellees could lose their deposit money is if appellees cancelled the event. Zacarias testified similarly.

Saida testified that it was not appellants' policy to explain every line and page of the contract to a customer. Appellants ensured that the customer reviewed the contract before signing and made themselves available to answer questions about it, but Saida stated it was the customer's responsibility to read the contract. She stated this was important so that they understood what rights they did and did not have under the contract. She also testified that appellants' employees were trained to be familiar with the contract and its provisions.

At her pretrial deposition, Saida testified that she did not recall whether Tijerina read the entire contract or not. She also stated that she was familiar with the contract's provisions. Saida explained the liquidated damages clause meant that if the customer moves or cancels the event date then the customer loses all money paid at that point. She did not recall if she discussed these provisions with Tijerina.

Tijerina did not plan to sign a contract that day but agreed to after Saida offered a $3,000 discount as a promotion. No one signed the contract on behalf of appellants. Tijerina asked to take a day to discuss the deal with Zacarias but claims Saida stated the discount would only be offered on that day and that a deposit had to be made. However, the separate written discount offer had no expiration date. Saida testified that she did not recall the details of this conversation and did not recall the exact details of the promotion or discount. Appellants did not retain written details about when the promotion stopped or started, and Saida could not recall when it began or ended. She also testified that she was not sure about what the business was charging in 2022 for the same package offered

3

to appellees. At her deposition, she stated that she and her husband decided when to stop and start promotional pricing.

To sign the contract, Tijerina called Zacarias and asked him to bring a $500 deposit to the venue. Zacarias did so and appellees jointly toured the location with Saida. Zacarias testified that he did not review the contract and was not given the contract to review. It is undisputed that Zacarias did not sign the contract. According to Tijerina, it was important that the wedding occur on a Saturday and they "paid extra" for a Saturday. Zacarias testified that appellees wanted to discuss the contract further but felt "pressure tactics" were being used with the promotion to get them to sign right away. He did not believe that any of the contract terms were negotiated with Tijerina, and they were not negotiated with him. Zacarias testified that he did not consider the contract terms applicable to him. Zacarias paid the deposit in cash and appellees received a receipt.

Over the course of several months, appellees made monthly $500 cash payments in accordance with their agreement. In November 2019, Tijerina asked to switch the wedding date due to her pregnancy due date. Appellants claim to have explained the cancellation policy in detail at that time, leading Tijerina to drop her request to change the date. During this time, the parties also reached additional agreements for appellants to provide further goods and services and appellees made payments for these new items. The final addition was made on February 27, 2020. On February 28, 2020, Zacarias wrote a check from his business account to appellants to pay the remaining balance owed of $16,075.

Afterwards, appellees became aware of the concerns surrounding the COVID-19 pandemic and approached appellants to discuss what would happen with the scheduled

4

reception date. Appellants' employee initially told appellees that they would lose their money if they cancelled the event or if appellants were forced to cancel the event. Appellees asked to reschedule, and appellants' employee said she would speak with Saida.

On or around March 17, 2020, Saida called appellees to notify them that the scheduled reception date would have to be cancelled due to COVID-19 and Hidalgo County orders requiring public events to be cancelled. Of import, Saida did not cancel the event outright but instead offered to reschedule the reception date but only offered Fridays, Sundays, or a weekday. Saida testified that at that time appellants had already ordered tablecloths and vases for appellees' event, though admitted those items could be used for other events.

Tijerina testified she could not agree to those dates as they needed a Saturday for out-of-town guests to attend. Saida emailed to confirm that only Fridays were available in 2020 and that appellees would lose all money under the contract if they did not agree to one of those dates. Appellees asked for a refund which appellants refused to provide. Appellees then hired an attorney to write a demand letter, which was sent on April 9, 2020.

Appellants sent a written response to the demand letter on April 10, 2020, claiming to have explained the contract in detail to appellees and describing the November 2019 incident when Tijerina asked to switch the wedding date. The response also stated that the offer to reschedule was only a courtesy because the contract entitled appellants to cancel the event without a refund or rescheduling a new date.

On April 20, 2020, the parties agreed to reschedule the reception date to Saturday, February 20, 2021. However, appellants required as a condition that appellees sign a letter stating "[w]e agree and fully accept that the deposit and all payments given are not refundable in accordance [with] the policy and signed contract at The Gala . . ." Appellants also sent a new contract to execute with this letter. Appellees refused to sign this letter or new contract on their attorney's advice. According to Tijerina, Victor refused to change their reception date or refund their money if they did not sign the letter and new contract. Appellees' counsel proposed they amend the original contract to change the reception date, but appellants refused that offer.[1]

The parties reached an impasse and litigation ensued. On October 16, 2020, appellees filed suit against appellants. Appellees filed their third amended petition on November 15, 2022, asserting causes of action for fraud, breach of contract, rescission, conversion, promissory estoppel, and for violations of the DTPA including multiple "laundry list" violations and unconscionable acts.

A jury trial commenced on November 13, 2023. Tijerina testified that appellants' refusal to reschedule a reception date or refund their money caused her anguish and stress due to the worry about whether they would have a wedding reception or get their money back. She also testified that appellants never provided anything of value in exchange for the total amount paid of $19,575 and never incurred any costs preparing for appellees' reception. She conceded that she did not have to sign the contract. She also admitted she could have chosen a different venue for her wedding reception. Tijerina testified that she was offered a variety of options for services for the reception. Regarding

---

[1] Appellees later married in December 2021 in Cancún, Mexico.

her experience with contracts, Tijerina stated she had familiarity with real estate contracts. Appellees' counsel testified regarding the proper amount of attorneys' fees.

Victor testified regarding ownership of The Gala building. He testified that he owned the building, though a K-1 tax form indicated that "The Gala Special Events, LTD" was the building's owner and that Victor was 99% owner of the company. He further testified that his wife Saida was the primary decisionmaker and manager of the business. He also stated that both parties to a contract should understand the details of the agreement. Victor said that the pandemic caused the cancellation of the May wedding reception, not any decision of appellants, and that they attempted to enter a "treaty for a change" to reschedule the reception date.

Saida testified that appellants made multiple attempts to accommodate a new date for the reception after it was cancelled. She said The Gala changed the date three to four times without charging additional fees. Her opinion is that the original date was cancelled due to the pandemic, not any fault of appellants or appellees. She testified that the business's success depends on reserving dates and making money from each date.

However, Saida admitted on cross-examination that she initially told appellees in an email that if they rescheduled the reception date for 2021, appellees would lose all of their money. She agreed that her contract was "one-sided" in favor of The Gala but said she did not apply the liquidated damages clause to appellees or any other customer. Saida asserted this was because dates were valuable to her business and if someone changes their mind, then she loses income that she otherwise would have received for that date. Saida also testified that though the contract stated the customer would lose all deposits and payments if The Gala cancelled an event for any reason, it had to be a

7

"valid" reason for The Gala to take such extreme action. She again testified that she ordered specific items for appellees' wedding reception, even though they could be reused for other events.

On November 16, 2023, the trial court partially granted appellants' motion for directed verdict, dismissing appellees' claims for fraud, breach of contract, and promissory estoppel. The trial court also entered an order sua sponte declaring the contract between the parties illusory and ordering that appellants return the contract sum to appellees.

On November 17, 2023, the jury reached a verdict finding that appellees were consumers under the DTPA and that The Gala Special Events, Ltd. had engaged in unconscionable actions against appellees, which were a producing cause of their damages. However, the jury found that appellants did not engage in knowing conduct and did not commit any DTPA "laundry list" violation. The jury awarded actual damages for the total amount paid as well as attorney's fees for trial and appeal.

Appellants filed a JNOV and motion for new trial asserting a variety of arguments. The trial court denied both motions and rendered final judgment on the jury's verdict on January 3, 2024. This appeal followed.

## II.    DISCUSSION

Appellants raise seven issues on appeal.[2] There are two outcome-determinative issues that we address first.

---

[2] Appellants' brief claims to advance nine distinct issues in the table of contents; however, only seven issues are briefed.

**A.   Order Declaring Contract Illusory**

On November 16, 2023, the trial court sua sponte entered an order declaring the contract between the parties illusory and awarding appellees the contract amount. This was based on the trial court finding that the contract provision allowing appellants to terminate the contract for any reason and keep all of appellees' deposits and payments failed to bind appellants. Generally, contracts that lack mutuality of obligation and, thus, allow a promisor to discontinue performance without notice, are illusory. *See Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied).

While the trial court's order did not specify the type of order it was, we treat it as an order granting directed verdict because the order entered a judgment on this issue as a matter of law following the close of evidence at trial. *See* TEX. R. CIV. P. 268; *Daniels v. Allsup's Convenience Stores, Inc.*, 604 S.W.3d 461, 465 (Tex. App.—Amarillo 2020, pet. denied). Specifically, we treat this as an order granting the equitable remedy of rescission of contract on appellees' breach of contract claim, as pleaded in the alternative, based on finding the contract illusory. Entered almost simultaneously on November 16, 2023, was an order granting appellants' motion for directed verdict, which we treat as an order denying the relief of monetary damages for breach of contract.

Appellants assert that the trial court erred in entering the sua sponte order because appellees' pleadings did not seek a declaration that the contract was illusory. We will examine whether it was appropriate to grant directed verdict on this issue based on appellants' complaint.

9

### 1. Standard of Review and Applicable Law

"We review a trial court's ruling on a motion for directed verdict under a legal-sufficiency standard." *Innovate Tech. Sols., L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.). "A directed verdict is proper when a defect in the opponent's pleadings makes them insufficient to support a judgment, the evidence conclusively proves the fact that establishes a party's right to judgment as a matter of law, or the evidence is insufficient to raise an issue of fact." *Id.* Questions of law, such as the legal meaning of words, are reviewed de novo. *In re Estate of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.). De novo review means we give no deference to the trial court's decision. *Id.* (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). "The judgment of the court shall conform to the pleadings[.]" Tex. R. Civ. P. 301. Any judgment must be supported by the parties' pleadings as "[a] court's jurisdiction to render judgment is invoked by the pleadings" and without a corresponding pleading a judgment "is erroneous." *Moran v. Williamson*, 498 S.W.3d 85, 93 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)).

"Rescission is merely the 'common, shorthand name' for the composite remedy of rescission and restitution." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012). It is typically used as a substitute for monetary damages and thus a party seeking rescission must prevail on a claim for which rescission is a remedy. *See Kennebrew v. Harris*, 425 S.W.3d 588, 595 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). It is an equitable remedy and generally disfavored and will only be granted when the relative equities clearly favor rescission. *See Davis v. Estridge*, 85 S.W.3d 308, 310 n.2 (Tex. App.—Tyler 2001 pet. denied); *see also Hart v. Besselman*, No. 07-24-00219-CV, 2025

10

WL 1561279, at *1 (Tex. App.—Amarillo June 2, 2025, no pet. h.) (mem. op.).

This remedy "operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or some other reason to avoid unjust enrichment." *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.). After rescission, "the rights and liabilities of the parties are extinguished, any consideration that was paid is returned, and the parties are restored to their respective positions as if no contract between them had ever existed." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 837 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The decision to grant rescission lies within the sound discretion of the trial court. *Id.*

"A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). If illusory promises are all that supports a purported contract, there is no mutuality of obligation and thus no contract. *Id.* Retaining the ability to terminate the agreement alone does not render it illusory, however, as a contract will still be enforceable if it guarantees prior notice to the other party before termination, and there is no retroactive application of any cancellation provision. *See Henry & Sons Constr. Co. v. Campos*, 510 S.W.3d 689, 694 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied).

Furthermore, mutuality in each contract clause is not required if there is consideration for the entire contract. *Am. Airlines, Inc.*, 281 S.W.3d at 224. "The test for mutuality is applied and determined when enforcement is sought, not when the promises are made." *Id.* If there is part performance by the promisee, then there can still be consideration for an illusory contract. *Id.* at 224–25.

11

**2. Was there a supportive pleading for the trial court's sua sponte order?**

We first examine whether there is a supportive pleading seeking rescission of contract based on an illusory promise. "Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense." *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 599 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). Therefore, so long as the petition "gives fair and adequate notice of the facts upon which the pleader bases his claim" then the petition will be held sufficient. *Id.* at 600. We must merely assess "whether an opposing party can ascertain from the pleading the nature of the controversy, its basic issues, and the type of evidence that might be relevant." *Id.* Appellants contend that appellees failed to raise this issue in their pleadings.

However, appellees' pleading did assert a "cause of action" for rescission due to failure of consideration as an alternative to a standard breach of contract cause of action. Appellees described the contract as containing "an illusory promise" as part of the background facts of their pleading and specifically stated in their alternative theory of recovery that appellants would be unjustly enriched by failing to perform as agreed. Although there is no explicit request for a declaration that the contract should be rescinded, appellees' petition asserted that the contract was illusory and, based on the failure of consideration, sought its rescission—whether this is done through a "finding," "ruling" or "declaration" is irrelevant because the remedy sought is restoring the parties to their initial positions. *See id.* at 599. Therefore, appellees' petition gave fair notice that appellees were seeking to void the contract and recover the balance paid to appellants. Appellants should have been able to ascertain from the face of the pleading that the

12

nature of the controversy involved whether the contract should be subject to rescission because the promises contained therein were alleged to not have been mutually binding. *See id.* at 600. Therefore, the trial court had authority to grant a directed verdict and provide relief in the form of rescission of contract, which, consequently, would place the parties in the same position in which they were before the contract was signed. *See Moran*, 498 S.W.3d at 93.

### 3. Was the contract illusory?

We next examine whether the contract was illusory, in support of a finding of rescission. The key provision reads "[(]1) If the client cancels or rebooks the date or [T]he Gala terminates for any reason the scheduled special event, the client loses automatically all deposits, security deposit[,] and any other payments made up to the date of the cancellation or termination." This provision as written permits appellants to terminate the agreement "for any reason" and causes appellees to lose all money paid for their event even if by no fault of their own. Because appellants can terminate the contract for any reason and are not obligated to return any money, this contract "does not bind the promisor" as appellants are able to terminate performance at any time for any reason. *See In re 24R, Inc.*, 324 S.W.3d at 567. While appellants reference other cases involving cancellation provisions, the cancellation provision here does not require any advance notice of cancellation to appellees and applies retroactively to allow appellants to keep all monies paid to them for the event, regardless of whether they perform. *See Campos*, 510 S.W.3d at 694. Therefore, the provision at issue lacks mutuality of obligation and is not enforceable. *See In re 24R, Inc.*, 324 S.W.3d at 567.

13

We must examine mutuality at the time enforcement is sought, rather than when the promises were made. *Am. Airlines, Inc.*, 281 S.W.3d at 224. Appellants argue that at the time of enforcement they did not enforce the contract provision as written and offered to reschedule the reception date after the COVID-19 pandemic forced the cancellation of the initial date. The record does indicate that the parties initially agreed to a rescheduled wedding reception date, but that there were disputes about executing a further contract and waiver of right to refund. While this conduct leaves the record a mixed bag, of import, the record indicates that appellants to date have not returned the contract sum and referenced the cancellation provision at issue as justification for not returning the money. Regardless of the true reason for the rescheduled date not moving forward, appellants kept the amounts paid, did not provide a wedding reception to appellees, and relied on the cancellation provision at the time enforcement was sought. *See id.* Therefore, this provision lacks mutuality which renders rescission an appropriate remedy; it would be inequitable and unjust enrichment to allow appellants to keep the contract amount after the failure of consideration. *See Gentry*, 188 S.W.3d at 410; *Davis*, 85 S.W.3d at 310 n.2; *Hart*, 2025 WL 1561279, at *1.

Appellants urge in the alternative that, if the Court finds the contract provision illusory, such provision is severable and the contract should otherwise be enforceable. Courts can generally sever an illegal or an unenforceable provision from a contract and enforce the remainder of the contract "so long as it does not constitute the essential purpose of the agreement." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008); *Couns. Fin. Servs., L.L.C. v. Leibowitz*, No. 13-12-00103-CV, 2013 WL 3895331, at *9 (Tex. App.—Corpus Christi–Edinburg July 25, 2013, pet. denied) (mem. op.). We

14

examine whether the parties would have entered into the agreement absent the unenforceable provisions and if the provision was a "main or essential" purpose of the agreement or if it was just one of the many promises made. *In re Poly-Am.*, 262 S.W.3d at 360.

The primary purpose of the subject agreement was for appellants to secure a date and provide a wedding reception at their venue on that date in exchange for the monetary payment by appellees. As Saida testified, the cancellation provision was included in the contract because dates were important to her business and helped prevent financial loss that would otherwise occur by booking a date that could not be provided to other customers. Therefore, the provision was an essential part of the primary agreement as a mechanism to help ensure that the event moved forward on the scheduled date. Absent the provision, the contract's primary purpose of securing a date for a particular event is thwarted and thus the entire contract must be held unenforceable. *See id.*

Further, even if the provision was severable, the provision is appellants' entire basis for withholding return of the prior paid amounts. As this provision is illusory, the prior paid amounts should be returned to appellees regardless of whether this provision is severable as appellants have no other legal basis for refusing to return appellees' money.

Accordingly, the trial court properly concluded the contract was illusory and that appellees were entitled to rescission and the refund of the contract amount. We overrule appellants' issue seven.

**B.    DTPA**

The jury found appellants engaged in an unconscionable action under the DTPA and awarded damages accordingly. Appellants advance multiple challenges related to

15

the jury's findings and argue that the trial court erred in denying appellants' motion for JNOV (issue one)[3], and in denying appellants' motion for new trial (issue two). While appellants assert a variety of arguments, central to the resolution of these issues is whether there was sufficient evidence to find appellants liable for having committed an unconscionable act. Accordingly, we must determine if the verdict is supported by sufficient evidence.

### 1. Standard of Review and Applicable Law

"We review a trial court's ruling on a motion for JNOV under a legal-sufficiency standard." *Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 82 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). Under such standard, "[w]e 'credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.'" *Ex parte City of Corpus Christi*, 427 S.W.3d 400, 404 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) (quoting *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). "We must uphold the jury's finding if more than a scintilla of competent evidence supports it." *Id.*

The legal-sufficiency review is deferential and we "must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *City of Keller*, 168 S.W.3d at 822. We should only find evidence

> legally insufficient when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.

---

[3] We agree that the motion for JNOV was implicitly denied by the trial court entering final judgment. *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999) (finding where trial court enters final judgment after a motion for JNOV is filed that the motion is implicitly denied).

*Katy Int'l*, 451 S.W.3d at 82 (citing *City of Keller*, 168 S.W.3d at 810). When the trial court's ruling on a JNOV is based on a question of law, we apply a de novo standard of review and should find that JNOV should have been granted if "(1) the evidence is conclusive and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery." *Id.* at 82-83. When attacking the sufficiency of an adverse finding for which they do not have the burden of proof, as here, appellants must demonstrate that there is "no evidence to support the adverse finding." *Ed. Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (citing *City of Keller*, 168 S.W.3d at 810)).

The DTPA creates a cause of action for a consumer when an "unconscionable action or course of action" is committed that is a "producing cause of economic damages or damages for mental anguish" against them. TEX. BUS. & COM. CODE ANN. § 17.50(a)(3). As a guiding principle, we liberally construe the statute "to promote its underlying purposes, which are to protect consumers against . . . unconscionable actions[.]" *Id.* § 17.44(a); *see also Martinez v. Martinez*, No. 13-19-00518-CV, 2020 WL 5887587, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 1, 2020, no pet.) (mem. op.). An unconscionable action or course of action is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5). "Grossly" is defined to mean conduct that is "glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985); *see Martinez*, 2020 WL 5887587, at *9. "[A] showing of the consumer's knowledge, ability, experience, or capacity is required." *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871,

17

877 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We evaluate unconscionability using "an objective standard for which scienter is irrelevant." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001); *Martinez*, 2020 WL 5887587, at *9. Therefore, a consumer need not prove specific representations by the defendant and does not need to prove reliance on such representations. *Mays v. Pierce*, 203 S.W.3d 564, 572 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The timing of the unconscionable action or course of action is also important. The unconscionable act or practice does not have to occur simultaneously with the purchase or lease of goods or services by the consumer. *Hous. Livestock Show and Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 575 (Tex. App.—Austin 2003, pet. denied); *see also Martinez*, 2020 WL 5887587, at *9. However, it must occur within the context of the purchase or lease of goods or services. *Ortiz v. Collins*, 203 S.W.3d 414, 424 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Martinez*, 2020 WL 5887587, at *9. In making this evaluation, we examine "the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference." *Chastain*, 700 S.W.2d at 583; *see also Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *16 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.).

A party must also prove that the unconscionable action or course of action was the producing cause of actual damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a); *Daugherty v. Jacobs*, 187 S.W.3d 607, 617 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "Producing cause is an 'efficient, exciting or contributing cause, which in a natural sequence produced injuries or damages complained of, if any.'" *Bartlett v. Schmidt*, 33

18

S.W.3d 35, 39 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied) (quoting *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex. 1975)). The producing cause must be "a substantial factor in bringing about the injury." *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009). In this analysis, "Texas courts require consideration of intervening and superseding causes." *Daugherty*, 187 S.W.3d at 617. A "plaintiff must show that there is some unbroken causal connection between the allegedly deceptive act and the actual damages suffered." *Bartlett*, 33 S.W.3d at 39. If the defendant proves there is a new and independent basis for the injuries, this may negate that the defendant's acts were the producing cause of the injury. *Id.*

### 2.   Analysis

In their live pleading, appellees asserted that the unconscionable act or course of action was that appellants "knew" the contract contained an illusory promise and that appellees executed a contract for an event that appellants could cancel at any time for any reason. Appellees also asserted that the refund waiver language was "inconspicuous," and that failing to disclose the illusory promise before appellees signed the contract was unconscionable. Similarly, appellees asserted at trial that it was unconscionable for the contract's cancellation policy to not comply with the DTPA waiver requirements. *See* TEX. BUS. & COM. CODE ANN. § 17.42.

First, the contract did not violate § 17.42. That statute only relates to a contract provision waiving the consumer's rights to bring a DTPA action. *See id.* Appellants do not assert that appellees waived their right to bring a DTPA action, as evidenced throughout the record. A refund or cancellation contract provision does not have to comply with § 17.42 and thus the failure to follow this provision is legally insufficient to prove an

19

unconscionable act. *See id.*; *see also Katy Int'l*, 451 S.W.3d at 82.

The parties dispute whether the no-refund language was conspicuous, the relative knowledge of both parties, and whether such language renders a contract inherently illusory. Appellants argue that cancellation policies that do not provide refunds are common. While the contract language is troubling, we do not reach the issue of whether inclusion of such language in a contract constitutes an unconscionable act as appellees failed to demonstrate that the presence of such language was the producing cause of appellees' damages. *See Daugherty*, 187 S.W.3d at 617.

While appellees pled that appellants' failure to disclose the contract language was the cause of their actual damages, the evidence at trial did not demonstrate that the mere presence of such language in the contract almost a year prior to the event's cancellation caused them damages. *See Katy Int'l*, 451 S.W.3d at 82. The undisputed evidence in the record established that the original May 2020 wedding date was cancelled because of the COVID-19 pandemic and the unfortunate resultant orders from Hidalgo County that interfered with businesses and the conduct of commerce. Both parties conceded multiple times throughout trial that the only reason the wedding reception did not proceed on the original date was because the county issued orders that forced appellant to close its venue to public events, not because appellants decided to cancel the event for any reason as, presumably, the cancellation policy would allow them to do. This constitutes evidence of a superseding event that was the cause of damages to appellees. *See Daugherty*, 187 S.W.3d at 617.

Furthermore, under Texas law, "one who signs an agreement, even without knowledge of its contents, is presumed to have consented to its terms and is charged

with knowledge of the agreement's legal effect." *McGonagle v. Stewart Title Guar. Co.*, 432 S.W.3d 535, 541 (Tex. App.—Dallas 2014, pet. denied). Because Tijerina signed the contract, she is charged with knowledge of the contract's terms, including the allegedly unconscionable provisions. *Id.* Therefore, this also constitutes evidence of a superseding cause regarding any allegations that appellants' failure to advise them of the contract terms was unconscionable because Tijerina is deemed to have been aware of the cancellation provision at the time she signed the contract. *Id.*; *Daugherty*, 187 S.W.3d at 617.

There is testimony regarding the parties reaching an agreement to reschedule the reception date to February 2021, and appellees make much of appellants' actions following the cancellation of the event. But appellees did not plead or argue at trial that the failure of the rescheduled event to occur was the cause of their actual damages, nor that their subsequent activity and the requirement to enter a new contract and waive liability or damages under the existing contract was the cause of their damages. Instead, appellees were focused on appellants' failure to issue a refund based on the contract language. As such, even assuming appellants' actions after the Hidalgo County orders canceled the event could be considered unconscionable, this evidence is legally insufficient because neither this Court nor the trial court can consider evidence not in conformity with the pleadings. *See Moran*, 498 S.W.3d at 93; *Katy Int'l*, 451 S.W.3d at 82.

Appellees failed to demonstrate there was an unbroken causal connection between the alleged unconscionable act, the presence of an inconspicuous "illusory" cancellation provision of a contract executed in 2019, and appellees' damages. *Bartlett*, 33 S.W.3d at 39. During oral argument, appellees were unable to identify the producing

21

cause of damages. As there is a complete absence of this vital fact, i.e., the producing cause, the evidence supporting the jury's verdict is legally insufficient and the trial court erred by denying appellants' motion for JNOV. *See Katy Intern*, 451 S.W.3d at 82; *Playboy Enters.*, 359 S.W.3d at 328. We sustain appellants' first issue.

## C. Attorney's Fees

As we have held that JNOV should be entered in favor of appellants on the DTPA unconscionability claim, appellees are not entitled to recovery of attorney's fees regarding that claim. They are also not entitled to recover attorney's fees by prevailing on the issue of rescission. While rescission is a recovery under a breach of contract theory, to recover attorney's fees for breach of contract, a party must "recover damages." *Kennebrew*, 425 S.W.3d at 600. Appellees have not recovered damages despite the return of the prior paid amounts as the effect of rescission is to undo the instrument and put the parties in the position before the contract was executed. *See In re Devon Energy Prod. Co.*, 312 S.W.3d 778, 784 (Tex. App.—Tyler 2010, no pet.). Thus, appellees are not entitled to recovery of attorney's fees. *See Am. Apparel Products, Inc. v. Brabs, Inc.*, 880 S.W.2d 267, 270 (Tex. App.—Houston [14th Dist.] 1994, no writ).

We therefore sustain appellants' issues four and five in part and overrule those issues in part.

### III. CONCLUSION

We conclude that JNOV should be entered in favor of appellants, we need not address appellants' issues three and six. *See* TEX. R. APP. P. 47.1. We uphold the trial court's order finding the contract illusory and affirm the judgment in part and its award of the remedy of rescission and the sum of $19,575 in favor of appellees. We reverse and

render judgment in part in favor of appellants regarding appellees' claims for DTPA unconscionability. We find that each party should bear their own costs and attorney's fees.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
31st day of July, 2025.

23